# Exhibit 7, Part 3

**Exhibit 2**

Claim No: CFI-048-2018

THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

IN THE COURT OF FIRST INSTANCE

BETWEEN

**SKAT**
**(The Danish Customs and Tax Administration)**

Claimant

and

**(1) ELYSIUM GLOBAL (DUBAI) LIMITED**

**(2) ELYSIUM PROPERTIES LIMITED**

Defendants

---

**ORDER OF JUSTICE SIR JEREMY COOKE**

---

PENAL NOTICE

IF YOU ELYSIUM GLOBAL (DUBAI) LIMITED DISOBEY THIS ORDER YOU MAY BE HELD TO BE IN CONTEMPT OF COURT AND YOUR DIRECTORS MAY BE IMPRISONED, FINED OR HAVE THEIR ASSETS SEIZED OR THE COMPANY MAY BE FINED OR HAVE ITS ASSETS SEIZED.

ANY OTHER PERSON WHO KNOWS OF THIS ORDER AND DOES ANYTHING WHICH HELPS OR PERMITS THE RESPONDENT TO BREACH THE TERMS OF THIS ORDER MAY ALSO BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE IMPRISONED, FINED OR HAVE THEIR ASSETS SEIZED.

**UPON** a further hearing following SKAT's (the Danish Customs and Tax Administration) ("the Applicant") application by notice dated 2 July 2018 for a return date following an *ex parte* application made by the Claimant on 27 June 2018 for a search order against the Elysium Global (Dubai) Limited ("the First Respondent")

1

**AND UPON** hearing Counsel for the Applicant and Counsel for the First Respondent

**AND UPON** the Court accepting the undertakings given by the Applicant in Schedule A

**IT IS ORDERED THAT:**

1. In this Order:

   (a) "the Search Order" means the Search Order of Justice Sir Jeremy Cooke dated 27 June 2018 made against the First Respondent, as varied by the Order of Justice Sir Jeremy Cooke dated 8 July 2018 and continued by the Order of Justice Sir Jeremy Cooke dated 12 July 2018;

   (b) "Deloitte" means Deloitte Professional Services (DIFC) Limited; and

   (c) "the Supervising Legal Representative" means Mr Philip Punwar of Baker Botts LLP.

**POTENTIALLY PRIVILEGED HARDCOPY DOCUMENTS**

2. As soon as reasonably practicable the Supervising Legal Representative, or appropriate persons appointed by him, do review the First Respondent's hardcopy documents in his possession as a result of the search of the First Respondent's premises and determine whether the same are privileged or falls within the orders made by the Crown Court in England & Wales (together "Privileged").

3. The Supervising Legal Representative do provide to the Privilege Search Team (as defined in paragraph 7 below) those documents which he determines are Privileged. The Privilege Search Team shall upload those documents onto the Relativity platform and hold them on the same terms as set out at paragraph 26 below.

4. The Supervising Legal Representative do provide the Applicant with those hardcopy documents he determines are not Privileged. However, before doing so, he shall inform the First Respondent's legal representatives of his intention to do so and shall afford them 10 days to object to the same. In the event of a dispute between the Supervising Legal Representative and the First Respondent as to whether any particular hardcopy document is Privileged, there be liberty to apply.

**POTENTIALLY PRIVILEGED ELECTRONIC DOCUMENTS**

5. The directions at paragraphs 6 to 26 below apply in relation to all electronic data obtained under the Search Order ("the Electronic Material").

6. Where Deloitte is still collecting Electronic Material, that material shall be dealt with in accordance with these directions as soon as possible following completion of the collection process.

**The Privilege Search Team**

7. Deloitte do forthwith establish a team of individuals ("the Privilege Search Team"), each member of which:

    (a) Must not have been engaged in relation to the dispute between the Claimant and (i) the Defendants, (ii) the defendants to proceedings brought by the Claimant in England & Wales or (iii) in the Dubai Courts or (iii) any other proceedings brought by SKAT in relation WHT reclaims;

    (b) May not subsequently be so engaged; and

    (c) Must be identified to the First Respondent's legal advisors.

8. Deloitte must take all reasonable steps to ensure that only members of the Privilege Search Team have access to the contents of the Electronic Material, save where:

    (a) this order provides that the Applicant may have access to the contents of any Electronic Material; or

    (b) the Applicant and the First Respondent agree in writing (which agreement may be by email).

**Preparation of the Electronic Material**

9. The Privilege Search Team do forthwith process the Electronic Material through Deloitte's Nuix software and thereafter upload the processed Electronic Material onto Deloitte's Relativity platform.

10. As soon as reasonably practicable after the Electronic Material has been processed through the Nuix software, save that they may not provide the contents or metadata of any particular document to the Applicant unless otherwise entitled to do so under this order, the Privilege Search Team shall report to the Applicant's legal representatives and provide the following information, insofar as reasonably practicable:

    (a) the volume of documents, if possible by number and data size;

    (b) an appropriate breakdown of the categories of documents and the volume of documents in each category;

    (c) the date ranges covered by each such category of documents; and

    (d) the distribution of the documents in each category by date range.

11. Within 7 days after receiving the report referred to in paragraph 10 above, the Applicant's legal Representatives shall provide the report to the First Respondent's legal representatives.

**Initial searches of the Electronic Material**

12. The time for the First Respondent to propose search parameters pursuant to paragraph 6 of the Search Order dated 17 July 2018 is extended to 26 July 2018.

13. As soon as reasonably practicable after the Electronic Material has been uploaded onto Deloitte's Relativity platform and after search terms have been provided in accordance with paragraph 12 above, the Privilege Search Team shall conduct a search of the Electronic Material for documents using the search parameters proposed by the First Respondent or such revised search as may be directed by the Court.

14. As soon as reasonably practicable after completion of that search, the Privilege Search Team shall:

    (a) Segregate all the electronic documents responsive to that search ("the Deloitte Segregated Documents");

(b) Provide the First Respondent's legal representatives with access to the Deloitte Segregated Documents; and

(c) Provide the Privilege Review Team (as defined at paragraph 21 below) with access to the remaining documents ("the Deloitte Unsegregated Documents").

15. The First Respondent (or its legal representatives) shall, within 21 days after being given access to the Deloitte Segregated Documents ("the Deloitte Review Period"), access the Relativity Platform and identify to the Privilege Search Team:

    (a) Which of the Segregated Documents are claimed to be Privileged ("the Deloitte Privilege Flagged Documents"); and

    (b) Which of the Segregated Documents are not claimed to be Privileged ("the Deloitte Cleared Documents").

16. At the expiry of the Deloitte Review Period all Deloitte Segregated Documents which the First Respondent has not identified on the Relativity Platform as Deloitte Privilege Flagged Documents shall be deemed to be Deloitte Cleared Documents.

17. As soon as reasonably practicable thereafter, the Privilege Search Team shall:

    (a) Provide the Applicant with access to the Deloitte Cleared Documents; and

    (b) Provide the Supervising Legal Representative with access to the Deloitte Privilege Flagged Documents.

18. As soon as reasonably practicable thereafter:

    (a) The Supervising Legal Representative, or appropriate persons appointed by him, do review the Deloitte Privilege Flagged documents and determine whether the same are Privileged; and

    (b) The Supervising Legal Representative shall provide the First Respondent's legal representatives with a list of Deloitte Privileged Flagged Documents which he considers are not Privileged ("the Deloitte List").

19. In the event of a dispute between the Supervising Legal Representative and the First Respondent as to whether any particular document identified on the Deloitte List is Privileged, there be liberty to apply within 7 days after provision of the Deloitte List to the First Respondent's legal representatives.

20. After the expiry of 7 days after the provision of the Deloitte List to the First Respondent's legal representatives, the Privilege Search Team shall provide the Applicant with access to the documents on the Deloitte List in respect of which no application has been made.

**The Privilege Review Team**

21. Pinsent Masons do forthwith establish from its UK offices (not including Birmingham) a team of individuals which will include sufficient legally qualified members ("the Privilege Review Team"), each member of which:

    (a) Must not have been engaged in relation to the dispute between the Claimant and (i) the Defendants, (ii) the defendants to proceedings brought by the Claimant in England & Wales or in the Dubai Courts or (iii) any other proceedings brought by SKAT in relation WHT reclaims;

    (b) May not subsequently be so engaged; and

    (c) Must be identified to the First Respondent's legal advisors.

22. Pinsent Masons shall establish appropriate information barriers between the Privilege Review Team and any other person in Pinsent Masons who at any time has worked, works or will work for the Claimant in relation to the dispute between the Claimant and (i) the Defendants or (ii) the defendants to proceedings brought by the Claimant in England & Wales or in the Dubai Courts.

23. Pinsent Masons must take all reasonable steps to ensure that only members of the Privilege Review Team have access to the contents of the Electronic Material, save where:

    (a) this order provides that the Applicant may have access to the contents of any Electronic Material; or

    (b) the Applicant and the First Respondent agree in writing (which agreement may be by email).

24. As soon as reasonably practicable after the provision of access to the Deloitte Unsegregated Documents pursuant to paragraph 14(c) above the Privilege Review Team shall conduct a review of the Deloitte Unsegregated Documents for documents which are or may be Privileged and which had been missed by the search carried out by the Deloitte Search Team. This review shall be undertaken in batches. The Privilege Review Team shall notify the Defendants' legal team in writing (which may be by email) when it commences the review of each such batch. When it has completed its review of each such batch the Privilege Review Team shall notify the Defendants' legal team identifying (i) those documents which it believes not to be Privileged and (ii) the hours incurred in the review and the period of time it believes is reasonable for the Defendants' legal team to complete its own review of such documents and object to the release of such documents to the Applicant.

25. The Defendants' legal team shall raise any such objections in writing within the period identified by the Privilege Review Team or apply to the Court to extend such period. Documents to which the Defendants' legal team raises no objection will be cleared for access to the Applicant. If objection is raised in respect of any documents, then such documents shall be treated as Privilege Flagged Documents and the process established in paragraphs 17(b) – 20 above shall be followed.

### Documents determined to be Privileged

26. Documents which the Supervising Legal Representative has determined are or may be Privileged shall be retained by the Privilege Search Team on the Relativity System until further Order of the Court.

27. The parties may agree variations to paragraphs 7 to 26 above in writing signed by both parties' legal representatives and there be liberty to apply.

### REMOTE SERVERS AND ARCHIVED MATERIAL

28. The First Respondent do take reasonable steps to procure that its director, Mr Sanjay Shah, and its IT manager, Mr Muhammad Wali Anwar, swear and serve on the Applicant by 4:00pm on 26 July 2018 affidavits setting out their knowledge as to:

(a) whether the First Respondent has provided the Applicant or Deloitte with complete and unrestricted access to all remote servers of whatever kind belonging to it or which it can access;

(b) whether the First Respondent has provided the Applicant or Deloitte with complete and unrestricted access to all its archived electronic data of whatever kind and wherever held;

(c) where any such remote server or archived electronic data which has not been disclosed is held and how it can be accessed;

(d) whether the First Respondent has stored hard copy documents outside the Premises and, if so, what documents are so stored, where and with whom.

29. Save to the extent that it has already provided access, the First Respondent do forthwith provide Deloitte with complete and unrestricted access to:

(a) all remote services of whatever kind belonging to the First Respondent or which it can access; and

(b) all its archived electronic data of whatever kind and wherever held.

30. The First Respondent shall forthwith and in any event within 72 hours issue instructions to Black Box LLC and any other party storing documents on behalf of the First Respondent or take such other steps as are reasonably required to cause Black Box LLC (or any such other party) to deliver the stored documents to the Supervising Legal Representative.

31. As soon as reasonably practicable after receiving documents pursuant to paragraph 30 above, the Supervising Legal Representative, or appropriate persons appointed by him, do review those documents and determine whether the same are Privileged. The First Respondent or its legal representatives shall be permitted to attend and participate in that review for the purpose of identifying to the Supervising Legal Representative any documents which are claimed to be Privileged.

8

32. Thereafter, The Supervising Legal Representative shall deal with any hardcopy documents received pursuant to paragraph 30 above in accordance with the terms of paragraphs 3 to 4 of this Order.

**HARD DRIVES**

33. Deloitte is permitted to inspect the 4 hard drives delivered to them by the First Respondent on 17 July 2018 and take such steps as are necessary to access the data on them, including, but not limited to the use of forensic software intended to overcome any encryption and / or password protection in place.

34. Deloitte is thereafter permitted to provide to the Applicant an overview of the data on the hard drives referred to in paragraph 33, including any conclusions they may have reached on whether and when data has been deleted from the drives.

35. Thereafter, Deloitte shall provide the said hard drives and any data on them to the Privilege Search Team who will incorporate the data into the Electronic Material for the purposes of paragraphs 8 to 26 above.

36. The First Respondent do take reasonable steps to procure its director, Mr Sanjay Shah, and its employee, Mr Muhammad Bilal Anwar, to swear and serve on the Applicant by 4:00pm on 26 July 2018 affidavits setting out their knowledge as to:

    (a) the circumstances in which 4 hard drives were removed from the First Respondent's registered office during the search carried out under the Search Order; and

    (b) what happened to those 4 hard drives between their removal from the said office and the delivery into Deloitte's custody on 17 July 2018 of the drives referred to in paragraph 33 above, including whether any changes were made to the data on them.

**TRACING INFORMATION**

37. The time for the Respondents to comply with paragraph 13(2) of the Freezing Order dated 17 July 2018 is extended to 6 September 2018.

38. Paragraph 14 of the Freezing Order dated 17 July 2018 is varied as follows:

9

The First Respondent do by 9 August 2018 cause to be sworn and served on the Applicant an affidavit identifying to the best of its ability the individuals or entities who have received the sums referred to in Schedule B hereto.

**VARIATION AND DISCHARGE OF THIS ORDER**

39. Anyone served with or notified of this order may apply to the Court at any time to vary or discharge this order (or so much of it as affects that person), but they must first inform the Applicant's legal representatives. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicant's legal representatives in advance.

**INTERPRETATION OF THIS ORDER**

40. A Respondent which is ordered not to do something must not do it itself or by its directors, officers, partners, employees or agents or in any other way.

**COSTS**

41. Costs are reserved.



Issued by:
**Ayesha Bin Kalban**
Assistant Registrar
Date: 31July 2018
At: 3pm

**SCHEDULE A**

UNDERTAKINGS GIVEN TO THE COURT BY THE APPLICANT

1. If the Court later finds that this order or carrying it out has caused loss to the First Respondent, and decides that the First Respondent should be compensated for that loss, the Applicant will comply with any order the Court may make. Further if the carrying out of this order has been in breach of the terms of this order or otherwise in a manner inconsistent with the Applicant's legal representatives' duties as officers of the Court, the Applicant will comply with any order for damages the Court may make.

2. The Applicant will not, without the permission of the Court, use any information or documents obtained as a result of carrying out the Search Order except for the purposes of these proceedings (including adding further Respondents) or commencing or pursuing civil proceedings in relation to the same or related subject matter to these proceedings in the Dubai and English Courts.

3. For the avoidance of doubt, the Applicant may not share any information or documents obtained as a result of carrying out the Search Order with any prosecuting authority involved in any criminal proceedings being prepared against the Respondents or related parties, including (but not limited to) Sanjay Shah.

**SCHEDULE B**

| Account | Transfers | Reference in the report of Deloitte LLP exhibited to the Affidavit of Mr Fortnam dated 25 June 2018 |
|---|---|---|
| Barclays (2184981) | USD 2,100,000 | Deloitte Report p.93 **[6/1599]** |
| ADIB (16755792) | USD 3,239,158 | Deloitte Report p.93 **[6/1599]** |
|  | USD 13,106,940 | Deloitte Report p.96 **[6/1602]** |
|  | Total: USD 16,346,098 |  |
| ADIB (16810323) | EUR 11,470,000 | Deloitte Report p.90 **[6/1596]** |

| ADIB (17392073) | GBP 1,082,125 | Deloitte Report p.63 **[6/1569]** |
| --- | --- | --- |
| | GBP 274,407 | Deloitte Report p.98 **[6/1604]** |
| | Total: GBP 1,356,532 | |
| ADIB (17392099) | EUR 4,095,848 | Deloitte Report p.61 **[6/1567]** |
| | EUR 1,431,882 | Deloitte Report p.66 **[6/1572]** |
| | EUR 982,867 | Deloitte Report p.69 **[6/1575]** |
| | Total: EUR 6,510,597 | |